# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.M.-1 and R.M.-2**

**No. 19-1090** (Hampshire County 19-JA-24 and 19-JA-25)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.M., by counsel Eric S. Black, appeals the Circuit Court of Hampshire County's November 1, 2019, order terminating her parental rights to R.M.-1 and R.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, terminating her parental rights, and denying her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition against the parents after law enforcement executed a search of their home and discovered stolen contraband, firearms, drug paraphernalia, scales, smoking devices, and methamphetamine. Upon the parents' arrests, the DHHR removed the children from the home. Petitioner denied drug use and blamed strangers for bringing drugs into the home. After the preliminary hearing, the circuit court ordered petitioner to participate in regular drug screening and supervised visitation with the children.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as R.M.-1 and R.M.-2, respectively, throughout this memorandum decision.

At an adjudicatory hearing held in June of 2019, petitioner stipulated that she failed to protect the children from "drug culture," including exposure to known drug users, and that drug contraband was found in the bathroom within reach of the children. She further acknowledged that she was required to maintain sobriety and follow the recommendations of her case plan. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period, and the circuit court held the motion in abeyance. On July 8, 2019, the DHHR filed the case plan, which required petitioner to (1) attend substances abuse classes and narcotics anonymous meetings, (2) participate in a parental fitness evaluation, (3) participate in adult life skills classes, (4) attend individualized parenting sessions, (5) and attend all scheduled supervised visitations. The same month, the circuit court held two status hearings. At the first status hearing, the DHHR presented evidence that petitioner had not complied with regular drug screening. The circuit court ordered that services continue in order to allow petitioner the chance to comply with drug screening. At the second status hearing, the DHHR presented evidence that petitioner had not only failed to comply with drug screening, but had also failed to comply with supervised visitations. The circuit court ordered that services continue to allow petitioner additional time to comply with drug screening and supervised visitations but also set the matter for disposition.

In September of 2019, the circuit court held a dispositional hearing, wherein the DHHR presented evidence that petitioner continued to regularly miss drug screens, substance abuse classes, and narcotics anonymous meetings; failed to wear her PharmChek/Sweat Patch;[2] continued to lie to the DHHR workers; and regularly showed up late to supervised visitations and other appointments. The DHHR also presented evidence that petitioner tested positive for methamphetamine and amphetamine several times since her adjudicatory hearing in June of 2019. Finally, the DHHR worker testified that petitioner minimally complied with services given the number of her "no shows for both classes and drug screens." Immediately after the hearing, petitioner tested positive for methamphetamine and buprenorphine.

The final dispositional hearing was held in October of 2019. Petitioner presented evidence in support of her motion for a post-adjudicatory improvement period. Petitioner testified that she did not have a substance abuse problem, the drugs found in the home belonged to others, and she continued to have a relationship with the father despite his incarceration and noncompliance with services in the case. She further testified that she found an appropriate drug treatment program. The DHHR presented evidence of petitioner's noncompliance with services and argued in favor of terminating her parental rights. The circuit court found that petitioner blamed others for the police finding drugs in her home and never acknowledged having a substance abuse problem, despite her positive drug screens throughout the pendency of the case. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Further, the circuit court denied petitioner's request for post-termination visitation. Ultimately, the

---

[2]This device gathers a sample of the patient's sweat over a ten-day period to submit for drug testing.

circuit court terminated petitioner's parental rights by order entered on November 1, 2019. It is from that dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her a post-adjudicatory improvement period. Specifically, petitioner contends that although "her initial compliance with the [circuit court's] drug testing regiment [sic] was not consistent" and she "struggled to maintain sobriety," she produced negative drug screens "on many occasions" and finally found an appropriate drug treatment program in September of 2019. Therefore, petitioner claims she acknowledged her substance abuse problem and was likely to participate in an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. The record establishes that petitioner did not consistently participate in services, as she often missed drug screens or tested positive for substances. Petitioner also failed to regularly attend her substance abuse classes, narcotics anonymous meetings, adult life skills classes, and individualized parenting sessions. Further, petitioner's supervised visitations were

---

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their foster home.

suspended several times due to her noncompliance. Contrary to petitioner's argument that she acknowledged the severity of her substance abuse problem, the record indicates that petitioner remained defensive throughout the proceedings, blamed others for her children's removal, blamed others for the drug contraband found in her home, and denied or minimized her drug use. Although by the time of the dispositional hearing petitioner represented to the circuit court that she would enter an inpatient rehabilitation program and/or drug detoxification program, the circuit court expressed its belief that petitioner would not attend. We note that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Most importantly, petitioner failed to acknowledge how her actions constituted abuse and/or neglect. Despite numerous positive drug screens throughout the proceedings, petitioner continuously failed to acknowledge the severity of her drug addiction and placed blame for any abuse and neglect of the children on others. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge her drug addiction and complete lack of insight as to how her actions constituted abusive and neglectful behavior, it is clear that the grant of an improvement period would have been futile. Accordingly, we find that petitioner is entitled to no relief in this regard.

We likewise find that the evidence set forth above supports the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019),[4] circuit courts are directed to terminate parental rights upon finding that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) (2019) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts."

As evidenced above, petitioner failed to follow through with her case plan. Specifically, petitioner failed to comply with the DHHR's services by testing positive for substances, missing drug screens, removing her PharmChek/Sweat Patch, missing appointments, showing up late to supervised visitations, missing classes, and lying to DHHR workers. Clearly, petitioner failed to avail herself of the services designed to assist in her reunification with the children. She waited until disposition before she sought appropriate substance abuse treatment and continued to fail to

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

report for drug screening, which was tied to her ability to visit the children. Further, petitioner claimed that she would leave the relationship with the father, yet evidence presented at the final dispositional hearing indicated that she was still contacting the father. Finally, petitioner minimized or denied her drug use and blamed strangers for the events that lead to the children's removal. Given petitioner's very minimal compliance with the DHHR's case plan, the record supports the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the children's welfare.

Lastly, petitioner argues that the circuit court erred in denying her request for post-termination visitation with the children. According to petitioner, she has a "close personal bond" with the children as they had lived with her their entire lives. Further, petitioner believes that post-termination visitation would not be detrimental to the children. We disagree.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

The evidence below demonstrates that post-termination visitation would not have been in the children's best interests. In light of petitioner's noncompliance with supervised visitations, the circuit court found no confidence in her ability to comply with or follow through with any directives of the circuit court if she were granted post-termination visitation. Further, petitioner's substance abuse remained untreated, and she failed to acknowledge how her actions constituted abuse and neglect of the children. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 1, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison